### 8118. FARRAR LUMBER CO. *v.* CITY OF DALTON.

1. Grounds of a motion for a new trial which complain of the refusal of the court to allow a witness to answer a certain question must of themselves disclose the expected answer, and that the judge was informed of it.

2. The court did not err in directing a verdict in favor of the defendant, as the evidence, with all reasonable inferences and deductions therefrom, demanded such a finding.

DECIDED JUNE 7, 1917. REHEARING DENIED JUNE 27, 1917.

Complaint; from Whitfield superior court—Judge Fite. April 8, 1916.

Farrar Lumber Company, a partnership, brought suit against the City of Dalton, alleging: that "defendant is a municipal corporation situated in Whitfield county, Georgia; . . that defendant negotiated and purchased from the plaintiffs various and sundry building material, the various items of which are set out by a bill of particulars hereto attached, to the value of $151.57, balance due, . . . that said material was purchased by the City of Dalton for the purpose of, and was actually used in, the construction of a house on real estate belonging to said city in North Dalton, for the purpose of housing the equipment of the fire department of the city, and particularly the North Dalton Reel Company, said building being known as the North Dalton Reel Company Hall; . . . that said City of Dalton, the said defendant, accepted said material used in said building, and have since enjoyed the benefit and use of same, and have refused petitioner's demand for payment." Defendant filed a plea denying the indebtedness, and further pleaded as follows: "Answering further, this defendant says: that on February 27th, 1912, the board of education of the City of Dalton granted to the North Dalton Fire Company, a volunteer fireman's association, the privilege of erecting a building by private subscription upon some real estate in North Dalton in charge of said board of education and being used for school purposes. Floyd F. Farrar, a member of the partnership plaintiff, was a member of the board of education and secretary thereof, and was present at the meeting when this was done. The North Dalton Fire Company then proceeded, under said permission, to purchase the material needed for the building which it proposed to erect, from the Farrar Lumber Company. The City of Dalton had nothing to do with the purchase, and no bill was ever presented to it until after said plaintiffs failed to get their money from the fire company, to whom they originally charged the account. . . The effort to get this money from the City of Dalton was an effort to get the mayor and council thereof to misappropriate the people's money, the said plaintiffs well knowing, and having been advised by counsel, that

they had no cause of action against the city." The court directed a verdict for the defendant, and the plaintiff. excepts.

*C. D. & F. K. McCutchen,* for plaintiff.

*M. C. Tarver, G. G. Glenn, J. J. Copeland,* for defendant.

BLOODWORTH, J. (After stating the foregoing facts.) 1. The fourth ground of the motion for a new trial is as follows: "Because the court erred in making the following ruling upon testimony: 'Mr. Farrar, just go ahead and tell what occurred at the time you appeared there before the council?' 'I appeared before the council—a committee was appointed—rather before the chairman of the fire department committee, to have our bill audited.' Mr. Tarver: 'The action of the council is shown by the minutes, and we object.' Mr. McCutchen: 'We want him to tell what the various members said at the meeting.' Court: 'Suppose they had a discussion and finally acted, wouldn't the minutes control? I will rule that out. You are bound by the action of the corporation as shown by the minutes, as I understand it.'" This ground is incomplete. Grounds of a motion for new trial which complain of the refusal of the court to allow a witness to answer a certain question must be complete, and must of themselves disclose the expected answer, and that the judge was informed of it. *Western & Atlantic R. Co.* v. *Waldrip,* 18 *Ga. App.* 264 (3) (89 S. E. 346). There is nothing in this ground to indicate what the witness would have sworn as to what the various members of the city council said at the meeting. Even if it had been specifically stated what the witness would have sworn, the separate statements of the individuals composing the council would not legally have bound the city. It is only when the minds of a sufficient number of the council unite upon a proposition, and this is voted upon and receives the number of votes required by the charter, that it becomes the action of the city council and binds the city. Until the contrary appears, the action of a city council is supposed to be in writing; and its book of minutes, properly proved as such, or an exemplification of the record, certified by the clerk or keeper of such records, under seal, is the proper mode of placing the evidence before the court. Civil Code, § 5803; *Metropolitan Street R. Co.* v. *Johnson,* 90 *Ga.* 500 (3) (16 S. E. 49); *Western & Atlantic R. Co.* v. *Hicks,* 104 *Ga.* 12 (30 S. E. 424); *Town of Jackson* v. *Ellis,* 116 *Ga.* 719 (43 S. E. 53); In re *Lester,* 77 *Ga.* 143.

2.   Did the court err in directing a verdict?

(a)   There is absolutely no evidence to show that the city coun-
cil itself, through a committee, or by an authorized agent, or in
any other way, ever ordered the material sued for in this case.
Therefore the plaintiff could not recover on the idea that the de-
fendant purchased the goods.

(b)   Plaintiff in error insists that the city council expressly
ratified the purchase by a resolution passed on May 5, 1913, au-
thorizing the clerk to draw a voucher for the bill, and that the
voucher was actually issued, and therefore the city should pay the
bill.   The signature of the mayor was necessary to make good the
voucher, and he refused to sign it.   Then, on June 16, the former
action of the city council was rescinded by a resolution, as follows:
"On motion of Alderman Hamilton, that the city council rescind
the action of the city council on May 5, in regard to paying the
Farrar Lumber Company account against the North Dalton Fire
Department."   Therefore, as far as these resolutions are concerned,
the matter stands as though it had never been acted upon by the
city council.

(c)   Finally, plaintiff in error contends that the city, by its
acts, and especially by the use of the building, ratified by implica-
tion the purchase, and is bound for the bill.   Counsel for plaintiff
in error insist that the case of *City of Conyers* v. *Kirk*, 78 *Ga.*
480 (3 S. E. 442), covers the present case "all fours," and is con-
trolling.   That case is easily distinguishable from this case.   There,
as shown by the original record, H. Y. McCord, a member of the
council and chairman of the street committee, swore:   "I saw
every member of the council before I made the purchase, and
they told me to go ahead.   They were to be paid for cash, but
Mr. Jones, the treasurer, was out of town.   I and Mr. Knight, as
the street committee, made the trade.   It was as fair a trade as
was ever made, and it [ought] to be paid."   The purchase of the
lamps and oil by the City of Conyers, for which suit was brought,
was not only a cash transaction made through an appropriate
committee, but the lamps were used for a month, and the gasoline
consumed in lighting the streets of the city.   The city authorities
themselves accepted the articles purchased, and used them, and the
Supreme Court held that the city impliedly ratified the purchase
by "taking the fruits of the contract and enjoying them for a

considerable time without notice of objection." Mr. McCord, the chairman of the committee, making the purchase of the lamps and oil, was so indignant at the action of the city council in refusing to pay for the articles purchased that he resigned as a member of the city council. In the instant case the material for which suit was brought was not purchased by the city council, nor by any committee or authorized agent thereof, but by a representative of a volunteer fire company. It was not a cash sale, and no notice was given to the city council, for a number of months after the transaction, that they were expected to pay the bill. In the decision in the case of *City of Conyers* v. *Kirk,* supra, it was said: "It was contemplated that payment should be made as soon as the articles were delivered; and the reason indicated in the record why payment was not then in fact made was the accidental absence of the city treasurer from his office. So that this debt (and it is a debt now) became such, not by virtue of making the contract, but by virtue of breaking the contract; and surely there never can be and never will be any law against paying a debt which arises from default in making a cash payment at the time the debtor ought to have made it, the cash sufficient for the purpose being then in the debtor's treasury."

There is no sufficient evidence to show that the City of Dalton ever in any way directly used the house erected out of the material for which suit was brought. The material was purchased and used by a volunteer fire company to which the city made certain contributions, but this would not bind it for the bill, nor would the city be bound simply because it may have indirectly received benefits from the building. In addition to the above, the following contract was in evidence, and to its terms and parties attention is specially directed: "It being the desire of North Dalton citizens to erect by private subscription a fire hall on the southwest corner of the North Dalton school lot, permission is hereby given the North Dalton Fire Company to put up a fire hall on site to be pointed out by the board of education, it being distinctly understood and agreed that the said fire company is to acquire no title, rights or equities to said premises, and is to remove any building that may be erected on said lot at any time when instructed to do so by the board of education. The North Dalton Fire Company agrees to keep the premises neat, clean, and in good order, and not

to in any way interfere with the school playgrounds, trees, or walls, and to allow no loitering or drinking about the fire hall. [Signed] Dalton Board of Education, Frank Manly, Chairman, North Dalton Fire Company, S. A. Finley, Captain."

After carefully considering all the evidence in the case, we conclude that the court did not err in directing a verdict in favor of the defendant, as the evidence, with all reasonable inferences and deductions therefrom, demanded such a finding.

*Judgment affirmed. Broyles, P. J., and Jenkins, J., concur.*